IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PAULINE ATKINS                                              PLAINTIFF

   v.      CIVIL NO. 18-5164

ANDREW M. SAUL,[1] Commissioner
Social Security Administration                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Pauline Atkins, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff protectively filed her current application for SSI on April 28, 2015, alleging an inability to work due to mental retardation and cirrhosis of the liver.  (Tr. 67, 201).  An administrative hearing was held on December 4, 2017, at which Plaintiff appeared with counsel and testified. (Tr. 40-65).

By written decision dated January 18, 2018, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe.

---

[1] Andrew M. Saul, has been appointed to serve as Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

(Tr. 23).    Specifically, the ALJ found Plaintiff had the following severe impairments: cirrhosis of the liver, hepatitis C, borderline intellectual functioning and major depressive disorder. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 24).    The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk 2 hours in an 8-hour workday; sit, for 6 hours in an 8 hour work day; and push and/or pull 10 pounds occasionally and less than 10 pounds frequently.  In addition, the claimant retains the ability to understand, remember and carry our (sic) simple jobs (sic) instructions and to make decisions/judgments in simple work related situations.  The claimant is also able to respond appropriately with co-workers, supervisors and the public and has the ability to respond appropriately to minor changes in the usual work routine.

(Tr. 27).  With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a circuit board assembler and a toy stuffer.  (Tr. 32).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence submitted by Plaintiff, denied that request on June 21, 2018. (Tr. 1-6).  Subsequently, Plaintiff filed this action.  (Doc. 1).  Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 17, 18).

The Court has reviewed the entire transcript.   The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Evidence Presented:

At the time of the administrative hearing held on December 4, 2017, Plaintiff, who was forty-four years of age, testified that she had an eighth grade education.  (Tr. 44).  The record revealed Plaintiff had no past relevant work.  (Tr. 43).

The pertinent medical evidence before the ALJ during the relevant time period reflects the following. On May 15, 2015, Plaintiff was seen by Judith K. Lane, APRN, CNP, to establish care.  (Tr. 309-318, 338-341).  Nurse Lane noted Plaintiff was recently released from prison and was living in a drug rehab.  Plaintiff was imprisoned for about three years. Prior to her imprisonment, Plaintiff reported she drank twelve beers a day and used IV meth. Plaintiff reported she had Hepatitis C with known cirrhosis.  Plaintiff reported that prior to her imprisonment, she worked as a farmhand.  Plaintiff reported right elbow pain for the past two years.  Plaintiff also had a long history of gastroesophageal reflux disease (GERD). Upon examination, Nurse Lane noted no erythema or swelling of the right elbow with full range of motion with tenderness along the epicondyle.  Plaintiff was noted to have a normal mood and affect with normal thought content.  Plaintiff was assessed with Hepatitis C, right elbow pain, a rash, hematuria and GERD.

On June 6, 2015, Plaintiff was seen in the emergency room complaining of vaginal bleeding for two years and right flank pain with burning with urination for one month.  (Tr. 319-338, 341-347).  Plaintiff also reported dyspnea.  Plaintiff was assessed with a urinary tract infection and right lower quadrant pain.  Plaintiff was noted to have a normal mood and affect, and normal judgment and thought content.  Plaintiff was admitted and underwent testing.  Plaintiff was prescribed medication and discharged home on June 7th.

3

On July 2, 2015, Plaintiff underwent a consultative mental diagnostic evaluation and intellectual assessment performed by Dr. Cynthia W. Dupuis. (Tr. 349-356). Plaintiff arrived alone by way of public transportation. Plaintiff reported an inability to work because she did not comprehend well. Plaintiff reported she also worked too slowly. Plaintiff denied symptoms of depressed mood, anxiety, hallucinations or delusions. Plaintiff reported she went to school through the sixth grade, noting she repeated the sixth grade three times. Plaintiff reported that she began using illegal substances at a very early age. Plaintiff was jailed in July of 2012, and remained incarcerated until April of 2015. Dr. Dupuis noted Plaintiff presented with a normal mood and affect and logical and goal directed thought processes. Plaintiff spoke extremely slowly at times but exhibited an average work pace. Plaintiff exhibited no difficulty following directions and evidenced concentration, persistence and focus on all tasks. Dr. Dupuis noted Plaintiff completed the Wechsler Adult Intelligence Scale – Fourth Edition and received a Full Scale IQ of 74, Verbal of 72, and Perceptual Reasoning of 82. Dr. Dupuis noted Plaintiff's ability to sustain attention, concentrate and exert mental control was in the borderline range. Dr. Dupuis noted Plaintiff's report that she could complete chores, cook meals, manage money and obtain a driver's license. Dr. Dupuis noted Plaintiff reported a slow work pace led to an employment termination, but Plaintiff also reported she was also using methamphetamines at that time. Dr. Dupuis opined that Plaintiff had the ability to cope with the typical mental/cognitive demands of skill-appropriate work if she remained substance free. With respect to adaptive functioning, Plaintiff reported the ability to drive, prepare simple meals, clean her room, participate in karaoke at the drug rehabilitation center, and sit in groups to talk. Dr. Dupuis reported no evidence that Plaintiff had difficulty understanding instructions given by the examiner. Dr.

Dupuis indicated no limitations were observed in Plaintiff's ability to attend and sustain concentration on basic work-like tasks. Dr. Dupuis opined Plaintiff was also able to persist and work at a normal and steady pace.

On July 2, 2015, Plaintiff was also seen by Dr. Shaletha D. Jones for a follow-up for chronic issues. (Tr. 362-384, 404-420). Dr. Jones noted Plaintiff was recently released from prison after being incarcerated for three years. Prior to her incarceration, Plaintiff had a history of alcoholism and IV drug use. Plaintiff reported she had been clean for three years. Plaintiff reported dyspnea on exertion, and bilateral leg swelling for the past four years that had worsened over the past three to four months. Plaintiff reported she was unable to walk across the street without becoming short of breath. Plaintiff reported she saw a cardiologist before she went into prison but did not remember the diagnosis. While incarcerated, Plaintiff reported she had started spironolactone and Lasix but stopped taking the medication as she felt it was not working. Plaintiff reported back pain. Plaintiff had not tried physical therapy. Plaintiff denied numbness, tingling or weakness. Plaintiff reported she had recently been treated for a urinary tract infection. Plaintiff indicated her gastroesophageal reflux was controlled with medication. A musculoskeletal examination revealed edema and tenderness. Plaintiff had a normal mood, affect, behavior, judgment and thought content. Plaintiff was assessed with Hepatitis C, unspecified hematuria, GERD, dyspnea with exertion, and lumbar back pain. Plaintiff was prescribed medication and referred for physical therapy.

On July 9, 2015, Plaintiff underwent an echocardiogram that revealed normal systolic function and an ejection fraction estimated at sixty percent. (Tr. 391-397, 421-428).

On July 17, 2015, Plaintiff was seen by Laroya Jenkins, PT, for a physical therapy evaluation.   (Tr. 429-461).   After an evaluation, Plaintiff's goals were set. It was recommended Plaintiff attend one to two weeks of therapy for twelve weeks.

Physical therapy treatment notes dated July 22, 2015, indicate Plaintiff reported no back pain but she had left foot/ankle burning after working at a car wash all day.  (Tr. 462-465).  Plaintiff also reported a mild rash in the same area as where she felt burning.  Plaintiff tolerated the session well and was able to demonstrate the exercise program.

On July 23, 2015, Dr. Jerry Thomas, a non-examining medical consultant, opined Plaintiff did not have a severe physical impairment.  (Tr. 71-72).  On September 24, 2015, after reviewing the records, Dr. Clarence Ballard, affirmed Dr. Thomas' opinion.  (Tr. 85).

On July 23, 2015, Dr. Christal Janssen, a non-examining medical consultant, completed a Mental RFC Assessment opining that Plaintiff was moderately limited in some areas of functioning. (Tr. 73-75).  On the same date, Dr. Janssen completed a Psychiatric Review Technique form opining that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation, each of an extended duration.  (Tr. 72).  Dr. Janssen opined Plaintiff was able to perform work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote, few variables, little judgment; and supervision required is simple, direct and concrete (unskilled).  On September 24, 2015 , after reviewing the records, Dr.  Diane Kogut affirmed Dr. Janssen's opinion. (Tr. 85-89).

Physical therapy treatment notes dated July 24, 2015, indicate Plaintiff reported she had not had any pain since she had been able to move around and exercise more at home. (Tr. 466-469).

Physical therapy treatment notes dated July 31, 2015, report Plaintiff's complaints of increased pain after working at a car wash the previous day. (Tr. 470-473). Plaintiff reported a sharp pain in her right low back. Plaintiff denied pain at the time of therapy.

On July 31, 2015, Plaintiff was seen by Dr. Jones for a follow-up appointment for her Hepatitis C and dyspnea on exertion. (Tr. 474-486). Plaintiff reported new problems consisting of fatigue, a rash and an ovarian cyst. Dr. Jones noted Plaintiff recently underwent an echocardiogram that revealed an ejection fraction of sixty percent with no diastolic dysfunction. Plaintiff reported she stopped smoking one month ago. Plaintiff reported she was told she snored and at times woke up gasping for air. Plaintiff also reported pelvic pain and a rash on her lower extremities, bilaterally. Plaintiff reported she had started a new job that required her to be on her feet a lot. Plaintiff reported lower extremity swelling despite taking Lasix. Upon examination, Dr. Jones noted Plaintiff exhibited edema of the lower extremities. Plaintiff exhibited a normal mood, affect, behavior, judgment and thought content. Plaintiff was assessed with dyspnea on exertion, pelvic pain, Hepatitis C and a rash. It was recommended that Plaintiff elevate her legs when able.

Physical therapy treatment notes dated August 3, 2015, report Plaintiff's complaint of pain in the right lower back with working. (Tr. 487-490). Plaintiff denied pain after the last physical therapy session.

On August 17, 2015, Plaintiff was seen by Dr. Kathryn L. Brown for blurred vision, dry and itchy eyes and photophobia. (Tr. 491-497). Plaintiff was prescribed glasses and instructed to use Refresh.

On December 15, 2015, Plaintiff was seen by Dr. Jones for a follow-up appointment. (Tr. 504-508). Plaintiff was instructed to take her medication as prescribed, increase activity slowly and steadily, eat a low sodium diet and monitor her weight every day.

On February 2016, Plaintiff was admitted for her adjustment disorder with disturbance of emotion, cognitive disorder. (Tr. 509-514, 552). Medical records revealed the death of an immediate family member preceded this treatment.

On March 2, 2016, Plaintiff was seen by Kimberly D. Rhodes, APRN, CNP, for a follow-up regarding her Hepatitis C and Hepatic cirrhosis. (Tr. 515-517). Plaintiff was instructed to take medication as prescribed, eat a low sodium diet, increase her activity slowly and steadily and monitor her weight every day.

On June 21, 2016, Plaintiff was seen by Nurse Rhodes for a Hepatitis C follow-up appointment after starting antiviral therapy. (Tr. 518-548). Nurse Rhodes noted Plaintiff's manifestation of liver disease included fatigue, itching, right upper quadrant abdominal pain and muscle cramps. Plaintiff was noted as going under imaging every six months, with the last imaging in January 2016, that showed cirrhotic liver and splenomegaly. Side effects to the therapy consisted of headaches that were treated with naproxen. Plaintiff reported she smoked daily. It was recommended that Plaintiff start using acetaminophen for her headaches. Nurse Rhodes also refilled Plaintiff's trazodone, as Plaintiff reported she could

not see her mental health professional for two more months.   Treatment notes indicated Plaintiff recently moved and was working on establishing care providers locally.

On July 21, 2016, Plaintiff was seen by Nurse Rhodes for a follow-up appointment regarding her antiviral therapy.   (Tr. 549-566).   Plaintiff's side effects were noted as headache and back pain which were noted as well managed.   Plaintiff had no complaints related to her liver disease.   Plaintiff was noted to have a normal mood and affect, normal behavior and normal judgment and thought content.

On July 22, 2016, an Echo of the abdomen that revealed splenomegaly collateral vessels adjacent to the splenic hilum.   (Tr. 567-576).

On September 1, 2016,   Plaintiff was seen by Carmen T. Paniagua, APRN, for a follow-up appointment.   (Tr. 577-611).   Plaintiff denied nausea and vomiting, but reported feeling sick and having no energy in the morning upon waking.   Plaintiff also reported right lower quadrant abdominal pain in the evenings. Upon examination of Plaintiff, Nurse Paniagua noted no lower extremity edema or swelling and normal and active movements. Plaintiff exhibited a normal affect and behavior.   Plaintiff was advised to lose weight and maintain a regular exercise program.   Plaintiff was assessed with cirrhosis of the liver without ascites, unspecified hepatic cirrhosis type; Hepatitis C virus infection, unspecified chronicity; alcoholism in remission; and a history of drug abuse.

On September 22, 2016, underwent an esophagogastroduodenoscopy (EGD) performed by Dr. Jeffrey Gillis in the presence of Dr. Matthew Deneke.   (Tr. 612-645). Plaintiff tolerated the procedure well.   Plaintiff was to undergo a repeat procedure in four weeks and then follow-up with her referring physician.

On January 23, 2017, Plaintiff underwent an initial report of physical examination at the Arkansas Department of Corrections.   (Tr. 646-678, 687-688, 692-694, 715-719, 776-778). Plaintiff was restricted from an assignment that required walking or standing in excess of eight hours or lifting twenty pounds overhead for more than eight hours.  Plaintiff was to have a ten minute break from an assignment every hour. While incarcerated Plaintiff sought treatment for pain in her left hand, pain in her left foot, pain in her left arm, a tension headache, itching, a lesion on her foot, occasional abdominal pain and an adjustment disorder with a disturbance of emotion.   Plaintiff also underwent a repeated EGD.   Plaintiff was released in late September 2017.

On October 16, 2017, and October 17, 2017, Plaintiff was seen in the Washington Regional Medical Center emergency room complaining of abdominal pain for the past week. (Tr. 798-833).  Plaintiff reported the pain was worse at night when she was trying to sleep. Plaintiff was diagnosed with a urinary tract infection.

On October 19, 2017, Plaintiff underwent a CT of the abdomen and pelvis that revealed the following:

1.  Mild nonspecific wall thickening of the gastric antrum and proximal duodenum which may represent gastritis/duodenitis in the appropriate clinical setting.
2.  Nodular contour of the liver suggestive of cirrhosis
3.  Large splenorenal shunt with prominent gastric and perisplenic varices. Only a few very small esophageal varices are present. The portal vein is diminutive in caliber, however, no definitive filling defects are identified on the exam. Findings could be related to chronic partial portal vein thrombosis, which could be further evaluated with abdominal ultrasound.
4.  Splenomegaly

(Tr. 834-851).

On November 9, 2017, Plaintiff was seen at Ozark Guidance by Joyce Childers, LCSW.  (Tr. 852-858).  Plaintiff reported she was told to make an appointment after moving

to Washington County so that she could refill her medication.  Plaintiff reported she received SSI for mild mental retardation.  Plaintiff reported after her mom died in 2015, she tried to hang herself while she was incarcerated and the prison had her admitted.  Plaintiff reported she was now taking care of an elderly woman. Plaintiff reported that her mom, dad and sister were all disabled.  Plaintiff reported she was incarcerated after allowing an adopted grandfather to take her daughter who then molested her daughter.  Ms. Childers noted Plaintiff's mood was depressed and anxious.  With respect to a cognitive impairment, Ms. Childers indicated none reported.  Ms. Childers opined Plaintiff had poor judgment and insight and a low IQ.  Plaintiff reported she could not remember anything.  Plaintiff was estimated to have a very low intelligence.  Plaintiff was found to be articulate, able to attend to activities of daily living and that she had the capacity to learn.  Plaintiff was assessed with a schizoaffective disorder, depressive type and a generalized anxiety disorder.

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. § 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

IV.    **Discussion:**

Plaintiff argues the following issue on appeal: 1) the ALJ erred in finding Plaintiff not disabled because Plaintiff's RFC should have reflected her limitations more accurately.

A.    **Subjective Complaints and Symptom Evaluation:**

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  A review of the record revealed that during the relevant time period Plaintiff was able to take care of her personal needs; to prepare simple meals; to do chores; participate in karaoke at the drug rehabilitation center, sit in groups to talk and manage money.  (Tr. 236-243, 354-355).

With respect to Plaintiff's alleged impairments, both physical and mental, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication.  See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson

13

v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain).   With respect to Plaintiff's mental functioning, Dr. Dupuis, the consultative examiner, reported no evidence that Plaintiff had difficulty understanding instructions given by the examiner.   Dr. Dupuis indicated no limitations were observed in Plaintiff's ability to attend and sustain concentration on basic work-like tasks.   Dr. Dupuis opined Plaintiff was also able to persist and work at a normal and steady pace.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity.   Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### B.    The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).   It is assessed using all relevant evidence in the record. Id.   This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.   Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment.   20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."   Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).   Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.   Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).   "[T]he ALJ is [also] required to set forth

specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In determining that Plaintiff maintained the RFC to perform sedentary work with limitations, the ALJ considered the medical assessments of the non-examining agency medical consultants; Plaintiff's subjective complaints; and her medical records.  The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of the examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions.  Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).  After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

**C.    Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a circuit board assembler and a toy stuffer during the time period in question.  Pickney v.

<u>Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.      Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of  September 2019.


/s/   *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE